STATE HIGHWAY DEPARTMENT of the
State of Oklahoma and the State Insurance Fund, Petitioners,

v.

Pink CROSSLAND and the State Industrial
Court, Respondents.

No. 40166.

Supreme Court of Oklahoma.

Jan. 7, 1964.

Rehearing Denied April 28, 1964.

Mont R. Powell, Mary Elizabeth Cox, Oklahoma City, for State Insurance Fund, petitioner.

Harley E. Venters, Oklahoma City, for Pink Crossland, respondent.

BLACKBIRD, Chief Justice.

The respondent, Pink Crossland, hereinafter referred to as claimant has a rather complete and extensive medical and compensation history dating back to injuries he received when accidentally struck by an automobile while tending road flares as a night watchman near his home city of Ardmore, on July 11, 1957. At that time he was approximately 57 years of age. Pursuant to hearing on his representation on Form 3 filed with the State Industrial Court a few days later, that his injuries consisted of a fractured left thigh, a compound chip fracture of his right foot, and a severe dislocation of his left knee, claimant was by an order entered in that Court on April 27, 1959, adjudged, on the basis of those injuries, temporarily totally disabled from the date of the accident to, and including, February 20, 1959, and was awarded compensation for that disability for that period, which amount was found to have already been paid. In said order, said Court also adjudged that claimant's disability after the latter date was 40% permanent partial to the body and directed payment to him of compensation, on account of that disability, for a period of 200 weeks beginning the latter date (Feb. 20, 1959).

The issues presented herein arise out of claimant's efforts, which were finally successful, to obtain a further award on the basis of a change of condition. In his order entered April 4, 1962, herein reviewed, the Industrial Court trial judge found, among other things, that since his above-described award of April, 1959, claimant had suffered a change of condition for the

worse directly related to and resulting from his July, 1957, injury and was permanently and totally disabled, for which he "* * * is entitled to an additional 216 weeks' compensation at $30.00 per week * * *" all of which "* * * has accrued to date and shall be paid in a lump sum."

In connection with their appeal to the Industrial Court en banc, the parties appearing here, and hereinafter referred to, as "petitioners" filed a "MOTION FOR SPECIFIC FINDINGS", in which they requested, among other things: That the Court en banc designate the date claimant sustained a change of condition for the worse, and that it find whether or not his alleged back injury was sustained in the accident of July 11, 1957.

In adopting the trial judge's above-described order the Court en banc, in effect, overruled petitioner's motion for the specific findings. If it had found that claimant's back disability had been incurred, or sustained, in the July, 1957 accident this would have contributed support to the second of the two propositions petitioners present herein for vacation of the award, namely: "THE STATUTE OF LIMITATIONS HAS RUN AS TO CLAIMANT'S ALLEGED BACK INJURY."

█ In support of the just quoted proposition, petitioners cite the rule for which they cite Tomberlin v. General American Transportation Corp., (Okl.) 295 P.2d 811, Finance Oil Co. v. James, 188 Okl. 372, 109 P.2d 818, and Barnes v. Indian Territory Illuminating Oil Co., 170 Okl. 520, 41 P.2d 633, as follows:

"Where a claimant, at the time an award is made for accidental injuries, knows of injuries other than those for which he is being compensated, and exercises his judgment as to the seriousness of such other injuries and neglects to give notice to his employer within one year after the original accident, such claimant should not thereafter be permitted to recover for such undisclosed injuries."

The evidence to which petitioners point to support their contention that, if claimant has a back disability, it was incurred in the accident of July 11, 1957, and claimant knew of it at the time of his hereinbefore referred to April, 1959 award, is a statement the claimant himself made while testifying at the November 27, 1961, or first of the protracted hearings which culminated in the now questioned award, and statements of one of his medical witnesses, Dr. R, which was submitted in support of said claim. From the cross-examination of claimant on that date, appears the following:

"Q Never once, sir, did you ever complain or make any statement that you had an injury to your back until this morning?

"A Well, the doctor down there told me whenever I first got hurt I would probably have some trouble with my back."

Claimant's quoted answer probably has reference to his first and principal physician, Dr. Sp of Ardmore, who soon after claimant's July, 1957 accident treated his fractured left thigh by operating and inserting in it a Hansen Street nail or pin. About two weeks later, a Dr. St operated on claimant's right knee, and claimant wore a cast on both legs for many weeks. In November, 1957, a second operation was performed on claimant's right knee by a Dr. St.

When claimant first sought to re-open his case by filing a motion, on October 17, 1960, alleging that his condition had changed for the worse, neither of the reports of Doctors Sp and St, submitted in support thereof, mentioned any injury except to his legs. They recommended claimant's wearing of a leg brace for his right knee. The Industrial Court's order of November, 1960, directed his employer to furnish him such a brace.

While, as indicated by the above-quoted question in claimant's cross-examination of November 27, 1961, claimant never, before that day, gave any indication to the Indus-

trial Court, nor to his employer (as far as the record shows) that there was anything wrong with his back, a medical report of the afore-mentioned Dr. R two days before, and submitted on his behalf for that hearing, in describing the medical history related by claimant, stated:

"* * *

"His back has given him considerable trouble since the injury.

* · * * * *

"The right knee is supported by a brace. He states a plastic 'leader' was positioned in this area but that he is not able to support the leg without the brace. He has considerable aching in the right ankle. The back pain radiates down the back of the left leg to the foot at times.

* * * * * *

"He has noted his back pain has worsened considerably by certain activities. If he attempts to stand very long or if he attempts to do too much moving about he has difficulty. Holding any position for any particular length of time is cause for difficulty.

* * * * * *

"The past history reveals no previous accidental injuries and no complaints with regard to the back or extremities.
" * * *."

Following the above partially-quoted medical history, Dr. R's report stated the following findings from his re-examination of the claimant 10 days later, or on November 18, 1961:

" * * *

"Muscle spasm was present bilaterally in the lumbar region.

* * * * * *

"AP and lateral films of the lumbosacral spine reveal abnormal calcification about the femoral head and neck. There is apparently considerable overriding of the fifth lumbar vertebral body in this view. In the lateral view of the lumbosacral spine there is posterior wedging of the fifth lumbar vertebra with suggestion of a marked increase in the lumbosacral angle. There is also suggestion of spondylolisthesis at this level. These findings are suggestive of probable severe trauma to this region including possible compression fracture, fracture of the rami, and a disc syndrome at this level. Arthritic changes are not considered marked for a man of his age and work history. It is my impression that the above mentioned Mr. Crossland has 100 per cent or permanent total disability to the right leg for the performance of ordinary manual labor as a result of the injury to the knee. It is my impression that he has some disability to the left hip as a result of the overgrowth of bone at the site of entrance of the nail used in treatment of the fractured femur. It is also my impression that he has considerable degree of disability to the low back at the region of the lowest lumbar and lumbosacral joint. It is my impression that these disabilities are combinable with the disability to the right leg and that by combination these multiple disabilities produce permanent total disability to the body as a whole for the performance of ordinary labor as a result of the * * * accidental injury."

When Dr. R was cross-examined at the Industrial Court's hearing of November 27, 1961, about that part of his above-quoted medical history pertaining to claimant's suffering of back pain, he testified, inter alia:

"* * * it was not until he (claimant) attempted to really get up and around that he was aware that his back was bothering him in addition to the legs and that no one has ever paid any attention to the complaint in his back, but that these had been increasing, and . * * * at the time I examined him, he said that he had back pain which radiated down the back of the left leg to the foot at times. * * *."

When this doctor-witness was asked for an opinion as to the likelihood of claimant's

having complained about his back to the doctors who had earlier attended him after the July, 1957 accident, he answered:

> "I think he probably in the earlier stages of this had so much pain with his leg and so on, that he may not have complained much with his back at that time. When the fractures healed, then this may have brought about other complaints."

When asked if claimant would have been very conscious of any back pain two years after the accident, Dr. R testified that such pain would probably have become increasingly apparent as claimant had "* * * less trouble from his other injuries." He also testified that in his opinion, claimant's present complaints are "* * * more due to the back injury than to his leg injury."

Of the two medical reports made by Dr. Sp on May 16th, and November 1st, 1961, respectively, the latter one was the first in which a back injury, or condition, was mentioned. Therein, he stated, among other things, that claimant had made "recent" complaints related to his left leg and left sacro-iliac region, and that claimant's July, 1961 X-ray examination showed degeneration of a specified disc with moderate forward slipping.

At different times after the November 27, 1961 hearing, both the claimant and the respondents obtained, and submitted to the Industrial Court, additional medical evidence in an effort to establish that the claimant's back disability was, or was not, the result of his 1957 accident. Part of this was a report dated December 7, 1961 on Dr. F's re-examination of claimant that date in which it was stated, among other things, that:

> "* * *
>
> "The patient states that about 6 or 7 months ago he developed some pain and soreness in his lower back. The patient stated that 'it just began to hurt.'
>
> * * * * * *

> "The patient at no time has ever mentioned his lower back to me and again this date, the patient denies that at the time of the injury of 7–11–57 that he had an injury to his lower back."

In a deposition he thereafter gave on January 17, 1962, Dr. F reiterated, in substance, the above-quoted statements of his previous report, and, after expressing the opinion that claimant's pain in the back was due to congenital spondylolisthesis with degenerative arthritis, his deposition continued as follows:

> "Q   And, Doctor, you have no way of knowing when the date of the onset of his osteoarthritis began?
>
> "A   No, all I have is the patient's history. He began to have difficulty spontaneously about six or seven months prior to my seeing him on December 7th.
>
> "* * *."

Dr. F. gave other testimony to the effect that claimant's complaints of pain in his back could only be the result of trauma or fracture, if not caused solely by his osteoarthritis, which he characterized as congenital, and stated was without any relationship to his accident of July, 1957. This doctor expressed the opinion, in brief substance, that, if his back condition was due to the first two of these possible causes he would have complained of his back long before he did.

In a report dated November 1, 1961, from Dr. Sp, which the Industrial Court did not receive until more than a month later, the statement was made, among others, that as a part of claimant's "disability in being up and around, he uses the left leg and has has incurred the back pain, and left thigh problems as result of weakness and disability of the right leg. * * *." Thereafter, at the behest of claimant's counsel, a supplemental report dated January 22, 1962, by the same doctor was filed, in which he clarified and supplemented his above-quoted statement as follows:

> "* * *

"As part of this disability in being up and around, he (claimant) uses the left leg to increased extent and has incurred back pain and left thigh pain in this region as result of the weakness and disability of the right leg and increased use of the left, I feel that the previously mentioned degenerated L–5, S–1 disc and far advanced osteoarthrosis of his lumbar spine was a previously existing condition, which has been *aggravated* by his leg injury, and it is my impression that this *aggravation* is due to the injuries sustained in the automobile wreck in * * * 1957." (Emphasis ours.)

When Dr. Sp's deposition was taken on March 2, 1962, he further explained his conclusions with reference to claimant's back condition in the following excerpt from his cross-examination:

"Q And there is no direct relationship to his back trouble which is a degenerate process, nature's act, and the trauma that he experienced in July, 1957?

"A No, I do not believe that to be the case. I believe that this man had serious injuries to both the lower legs * * * lower limbs in this accident. Attempts have been made to repair these limbs and by large have been successful, but an important exception, is that he wears a brace on his right leg. He walks with an abnormal gait; he has unusual carriage and posture, because of these injuries to his legs and I feel that this back condition, which is not related to his injury, has become symptomatic, in part at least, because of the residuals of his injuries, which were sustained in this accident."

By said deposition, Dr. Sp also testified that he saw claimant professionally in February, twice in April, and on May 18, all in 1961, and on none of these occasions did he make any complaint about his back, but that when he saw him on July 11, 1961, he did complain of pain in the left sacro-iliac area, and X-ray examination was made which showed "degeneration of the L–5, S–1 disc, with moderate forward slipping."

In the award order herein reviewed, and approved by the Industrial Court en banc, the trial judge evidently adopted Dr. Sp's theory that claimant's back condition was aggravated, caused in part, or caused to become symptomatic, by the abnormal way in which, over an extended period, claimant had to stand, and use his limbs. Thus this order cannot be said to be without competent evidence reasonably tending to support it as to the causal connection, or relation, between the injuries claimant received in his July, 1957 accident and his present back condition, though one of the claimant's other doctors, and the respondents, apparently do not agree with some of Dr. Sp's conclusions. If Dr. Sp's theory, of how the claimant's back condition evolved, is accepted, and we see no reason why it should not be, then the hereinbefore quoted rule relied upon by petitioners demonstrates no error in the order herein reviewed. The overwhelming weight of the evidence is to the effect that claimant's present back disability is the result of a change of his condition, as it existed until a considerable period had elapsed after the accident, and that he did not know he had suffered any back injury attributable to the July, 1957, accident earlier than a year before he sought additional compensation on the ground of change of condition. We are therefore of the opinion that petitioner's first proposition lacks merit as a ground for vacating the award herein reviewed. As petitioners do not contend that, for said award to stand, claimant's present back condition must have been proved to be solely and directly caused by an injury to that portion of his body in that accident, and not only would that theory not have been consistent with the questioned order, but contrary to the overwhelming weight of the evidence, the Court en banc did not err in not complying with petitioners hereinbefore

mentioned request that it make a finding as to whether or not it was so sustained.

 However, such things cannot be said of the Industrial Court's failure to make a finding as to, or designate, the date on which claimant's change of condition occurred. As will be remembered, the questioned order found that claimant was entitled to permanent and total disability compensation for a period of 216 weeks, all of which *had accrued*, and ordered said award paid in a lump sum. It will also be remembered that the date of the order was April 4, 1962. Figuring 52 weeks to a year, 216 weeks ante-dating the order would be in February, 1958. But claimant had already received compensation as a totally disabled person, under the Industrial Court's original order of April 27, 1959, for the entire period from the date of the accident, July 11, 1957, to and including February 20, 1959. Such award for total disability was the maximum claimant could receive for that period, so that granting him, by the April 4, 1962 order herein appealed from, compensation for total disability for a period which overlapped, or began *before the end* of the period for which such maximum compensation was awarded by the April 27, 1959 order, amounted to a duplication, and was unauthorized. In this connection, see Brown Bros. v. Parks, 176 Okl. 615, 56 P.2d 883. This error might have been corrected if the Court en banc had complied with the petitioners' request for a finding as to when claimant's change of condition occurred. It is the duty of the Industrial Court in a case like this to make such a finding, and to fix the date of such change definitely. In this connection, see Standard Brands v. Gregor (Okl.) 328 P.2d 181, and Wade Lahar Construction Co. v. Howell, Okl., 376 P.2d 221, 225.

In view of the foregoing, we affirm the Industrial Court's determination that claimant is entitled to an award of compensation for permanent and total disability on account of a change in his condition related to and resulting from his July, 1957 "injury", but we vacate the award and remand the case to said Court for the sole purpose of further proceedings to determine, and enable a finding as to, the date when said change of condition occurred, and a re-computation of his award beginning that date.