Aulton B. ROSS, Petitioner,

v.

STATE INDUSTRIAL COURT of Oklahoma, Scott Chevrolet Company, and American Motorists Insurance Company, Respondents.

No. 40561.

Supreme Court of Oklahoma.

July 7, 1964.

Rehearing Denied July 28, 1964.

Harley Venters, and Miskovsky, Sullivan, Embry & Miskovsky, Oklahoma City, for petitioner.

George F. Short, Pierce, Mock, Duncan, Couch & Hendrickson, Oklahoma City, for respondents.

WILLIAMS, Justice.

This is an original proceeding brought by Aulton B. Ross, claimant, to vacate an order of the State Industrial Court denying claimant's application to reopen a proceeding on the ground of a change of condition for the worse. The application was denied by the Industrial Court on the theory that its previous holding, that a heart condition from which claimant was suffering was not "connected with" the accidental injury sustained by him while employed by respondent, Scott Chevrolet Company, on May 1, 1958, had become final.

Claimant's first notice of injury and claim for compensation was filed on May 20, 1958. The nature and extent of the injury recited was "ruptured spleen". On October 13, 1958, claimant filed an amended claim alleging "loss of spleen" and "injury to back and spine". A second amended claim was filed by the claimant on May 1, 1959. Therein he alleged "ruptured spleen, injured spine and back and caused or aggravated heart trouble which had become pronounced (no previously known heart trouble)". Respondent and its insurance carrier in their answer admitted "that on May 1, 1958, the claimant received accidental injury" but denied that he had sustained permanent partial disability. At the hearing before the trial judge on May 1, 1959, the attorney for the respondents specifically denied that "claimant sustained any injury to his heart or back".

At such May, 1959, hearing claimant testified that he was not able to work; that he had been to Drs. H. and T. concerning his heart. Claimant introduced a report from Dr. T. stating that he was totally disabled and unable to work. He also introduced a report fom Dr. W. which stated that he was "temporarily totally disabled and in need of further medical care and treatment" as "the results of the injuries he received on May 1, 1958". Respondents

did not introduce any evidence. Following this hearing the trial judge took no action.

On November 12, 1959, another hearing was held in said cause. Claimant's testimony was substantially similar to that of the previous hearing. Dr. W., witness for claimant, testified that there was a relationship between claimant's heart condition and the injury to the spleen; that the injury to the spleen and subsequent operation aggravated any "little heart trouble" claimant may have had prior thereto; that claimant was permanently and totally disabled; that half of such disability was due to the heart condition and half the result of disability to the back and the removal of the spleen.

Claimant introduced the report of Dr. G. who stated that during claimant's convalesence from surgery "he developed evidence of angina pectoris from which he has not recovered and which is now disabling him" and "I wonder if one can completely divorce the heart attack from the injury in view of the seriousness of the injury, the seriousness of the surgery, both of which undoubtedly had a weakening influence upon him and may, in fact, have made him easier to develop some disorder than if these injuries had not occurred".

Claimant also introduced several medical reports of Dr. B. who estimated his permanent partial disability to the body as a whole at 20% to 25% as a result of the injuries to the back and the residuals of the splenectomy. Such doctor further stated "as far as his cardiovascular deficiencies, I am still of the opinion that they were pre-existing in nature and are not related to the injury. I feel definitely that he needs additional medical treatment for this phase of his condition * * *"

Respondents introduced the medical report of Dr. H. dated December 19, 1958, wherein the doctor stated "I fail to find any definite evidence of cardio vascular disease at this time". Also, Dr. H.'s medical report of November 6, 1959, to the same effect, was introduced by respondents.

In his order filed December 9, 1959, the trial judge awarded claimant 25% permanent partial disability to his body for injuries to his spleen and back. In such order the trial judge further found "That claimant's heart condition is not connected with his accident, therefore he needs no further medical treatment arising out of his accident of May 1, 1958". No appeal from such order was lodged.

On June 6, 1961, claimant filed with the State Industrial Court "Employee's first notice of injury and claim for compensation". The claim was filed by an attorney other than the one who had previously represented him. Claimant alleged injuries to his spleen, back, neck, head and eyes and "other injuries". A motion for hearing was filed the next day but no further action was taken pursuant thereto. This same attorney on October 9, 1961, filed for claimant an "Amended form 3" as of October 7, 1961. In setting forth his injuries no mention was made of the heart condition. No action with reference to these claims appears ever to have been taken.

On June 19, 1962, claimant filed "Motion to Reopen". He alleged that since the order of December 9, 1959, "the nature and character of his condition has materially changed for the worse, in that he is now permanently and totally disabled on account of said injury, as shown by the attached medical report of Dr." W. Such motion was filed by the attorneys now representing the claimant.

In the report of Dr. W. of April 20, 1961, to which reference was made in such motion to reopen, the doctor stated "In my opinion, the heart condition has definitely developed because of the injuries he [claimant] received on May 1, 1958" and claimant "is totally and permanently disabled as a result of the injuries he received May 1, 1958".

On August 1, 1962, a hearing was held on claimant's motion to reopen. Claimant testified as follows:

"Q: Now at the time this order was written in '59 or '60, you were bothered with heart trouble; is that correct?

"A: Well, that still bothers me whenever I move right quick or whenever I slip or jump.

"Q: You said your back has started bothering you within the last year or so.

"A: It has hurt all the time, but it has got worse. I can't be up no time at all until it goes to hurting me worse.

"Q: Now back at the time this order was written, it was your heart condition that was keeping you from working?

"A: No, sir, it was my back still hurting just like it was. The heart hurt all right whenever I would slip or jump or strain, what I mean slip or jar around. That's when it would grab me and hurt and set me down and it still does the same thing, but that hurting through my back is what bothers me more than anything all the time and my neck."

In addition to introducing the report of Dr. W. of April 20, 1961, to which reference was made hereinabove, claimant introduced the report of Dr. M. dated May 2, 1962. In his report that doctor stated:

"This patient has a rather complex problem, he had a serious abdominal injury followed by removal of his spleen and subsequently a cardiac problem. Now he has cardiac insufficiency and in my opinion this man is permanently totally disabled as a result of the accident and subsequent complications directly rising out of his injuries of May 1, 1958."

At the conclusion of the hearing the trial judge entered an order denying claimant's motion to reopen. In such order the trial judge found that:

"* * * any condition from which claimant is now suffering which constitutes a change of condition is from his heart condition which has heretofore been held by this Court as not being connected with said accidental in-

jury, and, therefore, claimant's motion to reopen by reason of change of condition for the worse resulting from said accidental personal injury should be denied."

This order was appealed to the State Industrial Court en banc which affirmed the order of the trial judge.

■ For vacation of the order of the State Industrial Court claimant advances three propositions. The first is that "The finding of Judge Hargrave in his order of December 8, 1959, *'that claimant's heart condition is not connected with his accident,* therefore, he need no further medical treatment arising out of his accident of May 1, 1958', does not decide the issue of whether or not claimant's heart condition was aggravated by the injuries which claimant received on May 1, 1958". Under this proposition claimant maintains it was his "contention that he had a heart condition and the *injuries he had received in his accident had caused or aggravated his heart trouble";* that in its order the Court "merely stated that the fall did not cause his heart condition". Claimant admits that one may be foreclosed from seeking further compensation if "it clearly appears from the record that the issues tendered in the subsequent proceeding are concluded by the former determination of the trial tribunal".

In the hearing conducted by the trial judge prior to the issuance of his order of December 8, 1959, the claimant testified concerning his alleged heart disability and introduced medical evidence of effect that the injuries to his back and spleen aggravated a pre-existing heart condition resulting in disability by reason of such heart condition. Thus, one of the issues to have been decided by the trial judge in his order of December 8, 1959, involved compensability of the alleged heart disability. As noted above, the trial judge found that claimant's alleged heart disability was not "connected with" his accident. As above stated, the claimant did not appeal from that order and it has long since become final.

Webster's New International Dictionary defines the word "connected" as follows: "joined or linked together by some tie as of causality * * *" It would seem that the finding of the trial judge embraces all facets of causal relationship including aggravation.

In the case of Warren and Bradshaw Drilling Co. v. Boyd, Okl., 271 P.2d 324, in the syllabus, we held:

"Where, on a hearing before the State Industrial Commission, the Commission finds that the disability complained of by claimant is not due to accidental injury arising out of and in the course of his employment with claimant's employer, and claimant does not commence an action in the Supreme Court to review such award or decision within 30 days, as provided by 85 O.S.1951 § 29, the decision of the Commission becomes final and conclusive, and the Commission is without jurisdiction to thereafter reopen said cause on the ground of change of condition, under 85 O.S.1951 § 28."

■ Claimant's second proposition is that "If the order of December 8, 1959, should be considered to be res judicata as to any disability claimant might have as a result of his heart condition at this time, it would not bar claimant from recovering compensation for a future increase in disability due to a worsening of his heart condition caused by his compensable injuries." As we construe this proposition claimant is contending that in his order of December 8, 1959, the trial judge merely found that the claimant did not at that time have any disability as a result of his heart condition. Apparently the State Industrial Court did not so interpret such order, nor do we. No where in that order did the trial judge find that claimant's heart condition was compensable, nor was there any language in such order of effect that at that time claimant did not have any disability attributable to the heart condition. Rather the trial judge found no connection between the ac-

cident of May 1, 1958, and claimant's heart condition.

Once an order of the State Industrial Court of effect that a certain alleged disability is not compensable, becomes final, then and in that event such alleged disability cannot be the basis for an order finding a change of condition for the worse. See Warren and Bradshaw Drilling Co. v. Boyd, supra, and Nash v. Douglas Aircraft Co., Inc., 202 Okl. 459, 214 P.2d 919.

■ Claimant's last proposition is that "The order of Judge Reed, dated March 6, 1963, denying claimant's motion to reopen on change of condition is based on res adjudicata and there is no finding on the question of whether claimant's change of condition to the heart resulted from the compensable injuries he received on May 1, 1958, although there is competent testimony to support such finding."

Claimant contends that "If we eliminate the question of res adjudicata as we have urged under our Proposition II, then there is no finding on the Proposition of causal connection although there is competent evidence to support such finding."

It was not necessary for Judge Reed to decide the question of "causal connection" as it pertained to the heart condition. Such question was determined adversely to claimant by Judge Hargrave in his order of December 8, 1959.

As above noted at the trial on November 12, 1958, claimant submitted medical evidence of effect that the injuries received by him on May 1, 1958, aggravated his pre-existing heart condition. However, the trial judge refused to follow such reasoning and found no connection between the two.

Claimant cites the case of State Highway Dept. of Oklahoma v. Crossland, Okl., 391 P.2d 801. We do not consider that case applicable. Therein, the Industrial Court did not find that claimant's back condition had "no connection" with claimant's compensable injuries, but rather found that

his back condition became symptomatic by reason of his compensable injuries. We there sustained an award.

Where the State Industrial Court enters an order finding that a certain alleged disability has no connection with the admitted accidental injury and no appeal is taken thereform or action instituted in this Court to review such order, such order becomes final and conclusive, and the Industrial Court is without jurisdiction to thereafter reopen said cause on the ground of change of condition under 85 O.S.1961 § 28. See Warren and Bradshaw Drilling Co. v. Boyd, supra.

Order sustained.

BLACKBIRD, C. J., HALLEY, V. C. J., and DAVISON, JOHNSON and JACKSON, JJ., concur.