ELMER DURANT v. BUTLER BROTHERS.

148 N. W. (2d) 152.

January 13, 1967—No. 40,149.

*Spellacy, Spellacy & Lano,* for relator.
*Leonard Kne,* for respondent.

NELSON, JUSTICE.

Certiorari on the relation of Elmer Durant to review an order of the Industrial Commission filed November 4, 1965. Durant, while employed by respondent employer as a laborer, sustained personal injuries arising out of and in the course of his employment on October 1, 1953, when he was struck by some loose iron ore and fell a distance of 11 or 12 feet onto his knees. He received medical treatment and missed 2 days of work, but received no compensation for a healing period or for temporary total disability. He worked regularly thereafter, except for winter layoffs, until the spring of 1962. On March 16, 1959, he filed a claim petition for compensation for permanent partial disability of the legs, having developed progressive arthritis in both knees. On July 27, 1959, pursuant to stipulation he was awarded $2,213.75, the equivalent of 63.25 weeks of compensation for 15-percent permanent partial disability of his right leg and 10-percent permanent partial disability of his left leg. Employee received this compensation in a "lump sum" payment pursuant to Minn. St. 176.165, which provides in part:

"The amounts of compensation payable periodically may be commuted to one or more lump sum payments only by order of the commission on such terms and conditions as the commission prescribes."

In the spring of 1962 employee underwent a preemployment physical examination but was rejected by employer for various physical conditions, one an increased arthritic condition in both knees.

After the rejection employee petitioned the Industrial Commission to vacate the award of July 27, 1959, and permit him to file a claim petition for permanent total disability. On February 28, 1963, the Industrial Commission granted his petition, permitting him to "file claim petition for determination of whatever disability he has suffered, if any, after the date of said award."

After a hearing on August 14, 1963, an Industrial Commission referee found that due to the injuries sustained on October 1, 1953, employee's disability had increased and at the time of the hearing consisted of a 50-percent permanent partial disability of the right leg and a 30-percent permanent partial disability of the left leg. The referee also found that these disabilities had rendered employee permanently and totally dis-

abled from and after May 24, 1962. Employee was awarded compensation at the statutory rate of $35 per week "from and including May 24, 1962," payable during permanent and total disability, less the compensation previously paid for permanent partial disability arising out of the same accident. This award was made November 5, 1963, and affirmed by the Industrial Commission June 7, 1965.

It appears that employer interpreted the referee's findings to mean that there should be a waiting period of 63.25 weeks following the award for permanent total disability, during which time employee would receive no compensation. Employee interpreted the order to mean that he should receive $35 per week beginning May 24, 1962, and that the $2,213.75 previously paid would be added to payments made under the November 5, 1963, order, so that when the total payments reached $18,000, old age and survivors insurance benefits would be deducted from compensation benefits paid thereafter. When employer refused to pay accrued compensation during 63.25 weeks following the award, employee petitioned the commission for construction of the referee's order.

The commission rejected the contentions of both employer and employee in its order of November 4, 1965. The commission apparently reached the conclusion that in all cases the first 104 weeks of compensation must be denominated "healing period" and the next compensation payable, "permanent partial disability." Since employee had received 63.25 weeks of permanent partial disability, the commission relieved the employer of the duty of paying compensation for 63.25 weeks following May 24, 1964.[1] Employee contends here that the commission erred in so construing the referee's order.

This appeal therefore presents the following issues: (1) Where compensation has been paid for a condition of permanent partial disability and that condition later changes to permanent total disability, should any or all of the amount paid pursuant to a stipulated award for permanent

[1] The commission in its order actually refers to 62.25 weeks and the lapse of compensation as beginning May 31, 1964. This, we think, must have been an inadvertent error because admittedly employee received $2,213.75 pursuant to the award made July 27, 1959, which was in fact 63.25 weeks of compensation.

partial disability be credited on the later award for permanent total disability? (2) If any or all of the amount paid under the first award should be credited on the second one, when should such deduction take place?

This appears to be a case of first impression in this state. The law is not at all definite in this area. In 99 C. J. S., Workmen's Compensation, § 330(b), p. 1181, we find the following statement:

"In any case, generally speaking, the crediting of compensation paid against an award is dependent on statutory authority, and whether or not particular payments may be credited against a particular type of compensation award necessarily depends in a large measure on the terms of the applicable statutes and the construction given them by the courts."

Our Workmen's Compensation Act does not furnish a basis for the Industrial Commission's determination that employer is entitled to credit for the compensation paid for permanent partial disability pursuant to the stipulated award. A careful reading of Minn. St. 176.101 — which defines the various classes of disability —, as well as the other provisions of the Workmen's Compensation Act, discloses that the act does not provide for such a credit. The legislature's failure to provide for a credit for compensation paid under § 176.101, subd. 3, for permanent partial disability against a later award for permanent total disability under subd. 4 of the same section is made the more obvious by the fact that it is specifically provided in § 176.101, subd. 6, that previous payments under the compensation act are to be deducted from a subsequent award for "any compensation due on account of the death" of an employee where both awards arose out of the same accident.

Some states have specifically provided for the type of credit that was granted by the commission in this case. For instance, Idaho Code, § 72-310, provides:

"* * * In case the total disability begins after a period of partial disability, the period of partial disability shall be deducted * * *."

The Idaho Supreme Court in Endicott v. Potlatch Forests, 69 Idaho 450, 208 P. (2d) 803, said that this provision required that the total temporary disability and the permanent partial disability awarded an em-

ployee must be deducted from a subsequent award for permanent total disability.

Other states have specifically provided that the type of credit granted by the commission in the case at bar shall not be granted. For instance, Fla. Stat. 1965, § 440.28, provides that where a prior award of compensation is increased or decreased, "[s]uch new order shall not affect any compensation previously paid."

The Florida statute does, however, provide for an exception to this rule in cases where a new order decreasing compensation relates back to the time of the occurrence of the injury or is made effective at a date prior to the date or dates on which payments were made at the rate set in the prior award. It is interesting to note that the Florida Supreme Court, in the case of Smitty's Coffee Shop v. Florida Industrial Comm. (Fla.) 86 So. (2d) 268, held that the exception to the no-credit rule would not apply where the decrease in disability occurred after the prior greater disability award had been exhausted.

The Arizona case of Phelps Dodge Corp., Copper Queen Branch, v. Industrial Comm. 1 Ariz. App. 70, 399 P. (2d) 691, presents facts very similar to those in the instant case. In the Phelps case an employee was awarded $21.70 per month for life in 1939, based upon a 30-percent permanent partial disability. A lump-sum payment was thereafter sought and paid. In 1963, the employee's claim was reopened, his disability having become total and permanent. The court agreed with the employer that it should be given a credit in the sum of $21.70 per month against the monthly payments under the increased award for the balance of the employee's life. Since the prior award of $21.70 per month for the permanent partial disability was for the *life* of the employee, and the credit of $21.70 per month was to begin from the date of the 1963 award for permanent total disability, it is clear that the Arizona court did not credit the employer for any compensation paid the employee while he was permanently partially disabled from 1939 to 1963.

In Zagar v. Industrial Comm. 40 Ariz. 479, 485, 14 P. (2d) 472, 474, where the claimant sought to reopen his case by reason of a deterioration of his condition, the Arizona Supreme Court pointed out that the inves-

tigation was limited to new liability not considered in the original award and stated:

"* * * The disabilities shown by the evidence upon the original hearing were compensated by the original award. This follows as a natural consequence because the commission in making an award acts in a judicial capacity [citation omitted], and its judgment upon the facts developed in the original hearing and award is res judicata upon such facts."

In the Oklahoma case of State Highway Dept. v. Crossland, 391 P. (2d) 801, the employee was awarded compensation for temporary total disability for a certain period, and, after a later hearing, on a showing of a change of condition, a 1962 order awarded him compensation for permanent total disability, to be paid in a lump sum. The subsequent award overlapped the prior award and the court held (391 P. [2d] 807):

"* * * [C]ompensation for total disability for a period which overlapped, or began *before the end* of the period for which such maximum compensation was awarded by the April 27, 1959 order, amounted to a duplication, and was unauthorized."

The case was then remanded so that the Industrial Court could make findings as to when the change of condition occurred and recompute the award to eliminate the overlapping.

These last-mentioned cases would seem to hold that prior awards for compensation may be credited against a subsequent award for compensation based on a change of condition, but only to the extent the two awards overlap. The amount of the credit would not include payments made prior to the change of condition.

In the New Jersey case of Colbert v. Consolidated Laundry, 31 N. J. Super. 588, 107 A. (2d) 521, the single legal question involved on appeal was whether or not an injured employee who had previously been awarded temporary disability and permanent partial disability could obtain compensation for temporary disability and medical expenses attendant upon a relapse where the relapse produced the temporary disability and occasioned the medical expense and treatment but resulted in no increase of permanent disability. The New Jersey Superior Court indi-

cated that the New Jersey Workmen's Compensation Act, when read as a whole, though it requires but a single waiting period, does not limit compensation for temporary disability from a particular injury to a single period of temporary disability, saying (31 N. J. Super. 598, 107 A. [2d] 526):

"* * * [I]t is our considered opinion that these cases [New Jersey cases discussed by the court] do not preclude the award of medical expenses legitimately undertaken to decrease an increase in disability resulting from the condition caused by the injury even where a prior final award of partial permanent compensation has been made."

The court cited Ducasse v. Walworth Mfg. Co. 1 N. J. Super. 77, 62 A. (2d) 480. In that case the petitioner's condition became worse almost immediately after the original award of compensation for both temporary and permanent disability and was climaxed by an operation without beneficial results. The court held that the petitioner was entitled to be compensated for his increased disability stemming from the original injury, saying that irrespective of prior awards for disability, additional compensation may be awarded where the disability is proved to have increased. The New Jersey court in the Colbert case commented on the construction of the Workmen's Compensation Act in the following language (31 N. J. Super. 594, 107 A. [2d] 524):

"* * * Why construe narrowly a statute which courts construe liberally? A less liberal rule applied to claims arising under our Workmen's Compensation Act would do violence to the beneficent purpose intended to be effectuated by the act. Liberality of construction of the Workmen's Compensation Act has been firmly established and runs consistently through our cases on the subject."

It is clear that the Minnesota Legislature has left open the question of crediting prior compensation awards against a subsequent award for permanent total disability and has provided a credit only against an award based on death. This appears to be due in part to the fact that the maximum payment for death is $17,500 under Minn. St. 176.111, subd. 19. Permanent total disability payments, however, are for life, reduced only

494

by old age and survivors insurance benefit payments after a total of $18,000 has been paid. § 176.101, subd. 4.

Rather than crediting all compensation benefits previously paid against compensation payable under a subsequent award based on a change of condition, as employer contends should be done, only the overlapping compensation payments should in any event be credited under the present provisions of the Workmen's Compensation Act. Such a rule prevents "pyramiding" of compensation payments and at the same time gives to the injured employee that to which he is entitled under our act.

In the instant case employee was injured October 1, 1953. He received no compensation for that injury until he was found to be permanently partially disabled on July 27, 1959. For this disability, pursuant to an award embodying a stipulation of the parties, he received $2,213.75 as compensation. The compensation benefits were computed under § 176.101, subd. 3, and were to be considered full payment for a disability that would last the rest of his life. The award was paid in a lump sum. The referee's award does not indicate at what date employee was considered permanently partially disabled, but it is safe to say that such a condition of disability did exist at the time the stipulated award was made.

There is no allegation that employee did not continue to be permanently partially disabled until the referee found him to be permanently and totally disabled as of May 24, 1962. The effect of the referee's decision to reduce the compensation payable for the permanent total disability by the full amount employee received for permanent partial disability is to say that he was not entitled to compensation for the period in which he was permanently partially disabled. No overlapping of payments is established here and there is no decisional or statutory authority for the credit applied by the commission against the compensation benefits awarded to employee for permanent total disability.

Employee received 63.25 weeks of compensation for permanent partial disability under the award made July 27, 1959. While payment thereof was made in a lump sum, with commission approval, the period covered thereby must be considered as commencing on the date of the award. Thus the period of 63.25 weeks representing the lump-sum payment was bound to expire in due course long prior to the date on which

the referee found employee had become permanently and totally disabled. The award made November 5, 1963, was for such permanent total disability pursuant to § 176.101, subd. 4. The award of July 27, 1959, gave employee compensation for permanent partial disability pursuant to § 176.101, subd. 3. Each subdivision has separate application to distinct stages of disability. See, Orth v. Shiely Petter Crushed Stone Co. 258 Minn. 513, 104 N. W. (2d) 512. Subd. 3, covering permanent partial disability, may involve a healing period since, as courts have noted, a particular injury may or may not result in temporary total disability. The record is clear that there was no such period here. Notwithstanding that fact the parties agreed in 1959 that, even though the employee had not missed time on account of his injuries, he was entitled to medical benefits for their treatment and to compensation for permanent partial disability of each leg according to § 176.101, subd. 3(19, 43). This resulted in the lump-sum payment following the stipulated award of July 27, 1959. This award, for a different disability than that comprehended by the award of compensation for total and permanent disability, and final before the latter award was sought, should not be credited against it.

The decision of the Industrial Commission is reversed and the case remanded for entry of a decision in harmony with this opinion. Relator is allowed $250 attorneys' fees in this court.

Reversed and remanded.

MR. JUSTICE PETERSON, not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.