SPURGEON W. SMITH, EMPLOYEE, PLAINTIFF v. AMERICAN AND EFIRD MILLS, EMPLOYER, AND AETNA LIFE & CASUALTY INSURANCE COMPANY, CARRIER, DEFENDANTS

No. 8010IC965

(Filed 21 April 1981)

1. **Master and Servant § § 69, 94– workers' compensation – total and permanent disability following partial disability – additional compensation proper**

   Where all the evidence tended to show that plaintiff became totally and permanently disabled in 1978, but the Industrial Commission did not find as a fact that plaintiff was so disabled, the case must be remanded for a finding of fact on the issue of whether, and if so when, plaintiff became totally and permanently disabled. If the Commission should find that plaintiff became totally and permanently disabled, plaintiff's compensation should be to the fullest extent allowed under G.S. 97-29 and should be awarded without

Smith v. American and Efird Mills

regard to compensation previously awarded plaintiff under G.S. 97-30 for partial disability; however, a plaintiff should receive full compensation under G.S. 97-29 only where an award under G.S. 97-30 was fully paid *before* plaintiff became totally disabled, since, if the period for partial disability award overlapped the period for the total award, the stacking of total benefits on top of partial benefits, for the same time period, would allow plaintiff a greater recovery than the legislature intended.

2. **Master and Servant § 68– workers' compensation – partial disability followed by total disability – compensation for total disability – applicable statute**

Plaintiff should be compensated for his permanent and total disability under G.S. 97-29 as it read in 1978 when his disability became permanent and total, rather than as it read in 1970 when he first became disabled and was entitled to compensation for partial disability under G.S. 97-30, since plaintiff had no right to claim compensation, nor was the employer exposed to liability, under G.S. 97-29 until 1978 when plaintiff appeared to have become totally disabled.

3. **Master and Servant § 75– workers' compensation – total disability – medical expenses compensable**

In a workers' compensation case there was no merit to defendant's argument that medical expenses should be compensated only to the extent they would tend to lessen the period of disability, since, if a plaintiff is found to be totally and permanently disabled, he will be entitled to medical expenses for life, dating from the time he became totally disabled, subject only to the requirements of G.S. 97-29 that the expenses be "reasonable and necessary."

APPEAL by plaintiff-employee from the North Carolina Industrial Commission. Opinion and award entered 3 April 1980. Heard in the Court of Appeals 3 February 1981.

On 8 June 1978 the plaintiff-employee (appellant) filed this claim for workers' compensation for occupational lung disease caused by exposure to cotton dust in his employment with the defendant-employer (appellee). After hearings in Albemarle and Concord, Deputy Commissioner Dianne C. Sellers found and concluded that plaintiff had contracted an occupational disease (byssinosis) as defined by G.S. 97-53(13) and rendered an Opinion and Award ordering payment of compensation for temporary partial disability for 300 weeks beginning 1 January 1970. In addition, the Deputy Commissioner ordered payment of $8,500.00 for permanent, irreversible damage to both lungs and payment of all medical expenses as a result of the occupational disease. From this Opinion and Award, the defendant-employer gave Notice of Appeal to the Full Industrial Commission and filed an Application for Review. Subsequently, the

plaintiff-employee filed an Application for Review (plaintiff's counter-appeal).

In an Opinion and Award filed 3 April 1980, the Full Industrial Commission, by a two-to-one vote, (Commissioner Vance dissenting) struck the original award and rewrote it, therein reducing the sum of compensation previously ordered to temporary partial disability for 300 weeks only, beginning 1 January 1970. Furthermore, the Full Industrial Commission reduced the plaintiff-employee's award of medical expenses to those tending to lessen plaintiff's period of disability or to provide plaintiff needed relief from his occupational disease and incurred during the 300-week period beginning 1 January 1970. From the Opinion and Award of the Full Commission, the plaintiff-employee gave Notice of Limited Appeal to the North Carolina Court of Appeals pursuant to G.S. 97-86.1. The plaintiff's limited appeal was allowed by Order of the Chairman filed 27 May 1980, which noted that the defendant-employer did not give notice of appeal or file exception to the judgment of the Full Commission. Defendant moved to dismiss plaintiff's appeal for failure to file it within the thirty days allowed in G.S. 97-86. This Court allowed defendant's motion and dismissed the appeal; however, because plaintiff's appeal appeared to us to have substantial merit and because the appeal involved questions of first impression in this jurisdiction, we issued certiorari to the Commission in order to review the issues raised by the plaintiff. See Rule 21(a), N.C. Rules App. Proc.

The findings and conclusions of the Industrial Commission that plaintiff suffers from a compensable occupational disease are undisputed. Plaintiff does not contend that the Deputy Commissioner or the Full Commission incorrectly computed the rate and total sum of accrued partial disability compensation awarded pursuant to G.S. 97-30. Neither does appellant contest the Commission's conclusion that the applicable law for computing the partial disability award is G.S. 97-30, as it read on 1 January 1970, the date when plaintiff's period of partial disability began. Plaintiff challenges only the Full Industrial Commission's legal conclusions and amended award which limit plaintiff to partial disability compensation and medical expenses for 300 weeks only, denying him compensation for permanent and total disability under G.S. 97-29.

The evidence before the Deputy Commissioner, and later the Full Commission, was essentially undisputed. It included the testimony of plaintiff and his doctor, Douglas Kelling; the plaintiff's social security employment records, showing his earnings for the years 1937 to 1977; and the medical records and reports of Dr. Kelling after his first examination of plaintiff in 1978.

Plaintiff-employee, Spurgeon W. Smith, born on 7 May 1907, attended public school through the fourth grade and worked on a farm before starting his employment at defendant-employer's cotton textile mill in 1929. He worked more or less continuously until 1951, mostly in the card room at defendant's mill where he was exposed to cotton dust. Respiratory symptoms and breathing difficulty which began approximately 1935 caused plaintiff to miss work in the late 1940's. He stopped working at the mill in 1951, returning to farm work for about 10 years. He had no respiratory symptoms during that interval.

In 1962 plaintiff returned to defendant's mill and worked until September 1968. At that time his breathing difficulty became so severe he was forced to stop. From 1968 until the end of 1977, plaintiff worked and earned some wages at sedentary employment as a part-time night watchman. He earned no wages during the years 1974, 1975, and 1976. Since 1 January 1978 plaintiff's health has deteriorated and he is under the regular care of a pulmonary specialist. He regularly takes ten different types of medication and has a breathing machine and oxygen in his home.

Since September 1978 plaintiff has been under the care of Dr. Douglas G. Kelling, Jr., a specialist in pulmonary diseases, who has treated and hospitalized him. Dr. Kelling declared plaintiff totally and permanently unable to work as of 15 September 1978, on account of his occupational lung disease, and recommended that he receive regular medical care and treatment to sustain his life and give relief from his symptoms.

The plaintiff excepts to the following Conclusions of Law contained in the Opinion and Award of the Full Commission:

"2. Plaintiff is entitled to compensation as of 1 January 1970 when there was the first decrease in his average weekly wage, and thus when his disability, as defined by law, as a

result of byssinosis, first began. The plaintiff is, therefore, entitled to temporary partial disability compensation at the rate of $31.55 per week for the 300-week period, using $79.02 as the plaintiff's average weekly wage. Due to the exceptional circumstances of an unavailable wage chart, the procedure used to calculate the amount of $79.02 is the fairest to the plaintiff and will most nearly approximate the amount plaintiff would have been earning had it not been for his contracting byssinosis. The total amount of compensation which can by law be paid to a claimant with the disability date of 1 January 1970 is $18,000.00. G.S. 97-2(5) and (9); G.S. 97-29, as it read in 1970; G.S. 97-30; *Wood v. Stevens and Co.*, 297 N.C. 636 (1979).

3. For reasonable medical and/or treatment solely of such a nature as to tend to lessen plaintiff's period of disability or to provide plaintiff needed relief from his occupational disease and incurred during the 300-week period beginning 1 January 1970, employer is obligated to bear the cost thereof."

Plaintiff also excepts to the following conclusion, styled in the Opinion and Award as follows:

"COMMENT

This is a case of first impression before the Full Commission. In our opinion the date of disablement, 1 January 1970, brings to bear the statute as it existed on that date, with accompanying complications."

Plaintiff excepts to the following two Award provisions based on the foregoing conclusions:

"AWARD

1. As compensation for plaintiff's temporary partial disability defendants shall pay the plaintiff $31.55 per week for a period of 300 weeks beginning 1 January 1970. This amount, having already accrued, shall be paid in a lump sum, less an attorney fee hereinafter awarded to plaintiff's counsel.

\* \* \* \*

3. For reasonable medical and/or treatment, solely of such a nature as to tend to lessen plaintiff's period of disability or to provide plaintiff needed relief from his occupational disease and incurred during the 300-week period beginning 1 January 1970, employer is directed to bear the cost thereof after bills for such have been approved by the Industrial Commission."

*Hassell & Hudson by Charles R. Hassell, Jr. and R. James Lore for plaintiff appellant.*

*Hedrick, Feerick, Eatman, Gardner & Kincheloe by J.A. Gardner, III for defendant appellee.*

CLARK, Judge.

[1] This case presents us with the question of what compensation an employee may recover under the Worker's Compensation Act [the Act] for disability due to an occupational disease which at its inception was only partially debilitating, but which developed over time into a totally disabling condition. The employer argues that there is no evidence that the employee's condition progressed from partial disability to total. We disagree.

The Industrial Commission found as a fact that after being forced to leave the Mill, the employee had been able to work from 1968 to 1974 and again in 1977. These findings are supported by evidence before the Commission and unequivocally reflect that the employee's earning capacity, although diminished, continued until 1978. The employee does not appeal this finding of the Commission, nor does he question the conclusion that for the period of 1970 through 1977 he is entitled only to temporary partial disability compensation, nor does he question the award based thereon. Neither do we disturb the finding, conclusion, or award based upon partial disability beginning in 1970. We do note, however, that the employee brought this claim in 1978 at which time his testimony and the only medical testimony before the Commission agreed that he was totally and permanently disabled due to chronic obstructive lung disease, or byssinosis, caused by exposure to cotton dust. The record reveals that the employee did not work in 1978 or thereafter, and that he has not earned income since 1977.

Although the Opinion and Award of the Commission contains a finding that a physician had "determined plaintiff to be totally and permanently disabled" as of 15 September 1978, the Opinion contains no express finding of fact that the employee was or was not so disabled. We are fully aware that the jurisdiction of this Court is limited to the questions of law (1) whether there was competent evidence before the Commission to support its findings of fact and (2) whether such findings justify the legal conclusions and decision of the Commission. *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950); *Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 235 S.E. 2d 856 (1977). This Court may, however, remand a case to the Commission for further findings of fact, where we determine that the findings are insufficient to permit a full and fair adjudication on all matters in controversy. *Young v. Whitehall Co.*, 229 N.C. 360, 49 S.E. 2d 797 (1948).

> "The findings of fact of the Industrial Commission should tell the full story of the event giving rise to the claim for compensation. They must be sufficiently positive and specific to enable the court on appeal to determine whether they are supported by the evidence and whether the law has been properly applied to them. ... It is likewise plain that the court cannot decide whether the conclusions of law and the decision of the Industrial Commission rightly recognize and effectively enforce the rights of the parties upon the matters in controversy if the Industrial Commission fails to make specific findings as to each material fact upon which those rights depend."

*Gaines v. Swain & Son, Inc.*, 33 N.C. App. at 579, 235 S.E. 2d at 859, quoting *Thomason v. Cab Co.*, 235 N.C. 602, 605-06, 70 S.E. 2d 706, 709 (1952).

All of the evidence tends to show that plaintiff became totally and permanently disabled in 1978 and the Commission found that "[o]n September 15, 1978, Dr. Douglas G. Kelling first examined the plaintiff and then diagnosed chronic obstructive lung disease, or byssinosis, on the basis of exposure to cotton dust, and as a result, determined plaintiff to be totally and permanently disabled." The Commission, however, did not find as a fact that plaintiff was totally and permanently disabled as all of the evidence tended to show. It is implicit that this failure

was based on the assumption that as a matter of law plaintiff would not be entitled to compensation for total and permanent disability. We think that the Commission erred in this assumption and that if plaintiff became totally and permanently disabled in 1978 that he would be entitled to compensation for total and permanent disability. We must, therefore, remand this case for a crucial finding of fact on the issue of whether, and if so when, plaintiff became totally and permanently disabled.

Since the Commission has already found as a fact that plaintiff was partially disabled from 1970, a finding that plaintiff became totally disabled in 1978 would allow no other conclusion than that the employee's condition became worse over that eight-year period, progressing from partial disability to total. Faced with such a state of facts, the Commission would be required to determine the extent of the compensation and medical expenses to which plaintiff would be entitled under the Act. We note that the question of a period of total and permanent disability following a period of partial disability appears to be one of first impression in this jurisdiction, and remand without ruling on the question would probably result in another appeal with consequent delay and cost.

Plaintiff argues that his worsened condition entitled him to additional compensation, under G.S. 97-47, beyond the 300 weeks for which he received compensation. We disagree. G.S. 97-47 provides as follows:

> "Upon its own motion or upon the application of any party in interest on the grounds of a change in condition, the Industrial Commission may review any award, and on such review may make an award ending, diminishing, or increasing the compensation previously awarded. . . ."

"The Commission's authority under this statute is *limited to review of prior awards,* and the statute is inapplicable in instances where there has been no previous final award." *Watkins v. Motor Lines,* 279 N.C. 132, 137, 181 S.E. 2d 588, 592 (1971). *See also Pratt v. Upholstery Co.,* 252 N.C. 716, 115 S.E. 2d 27 (1960); *Biddix v. Rex Mills,* 237 N.C. 660, 75 S.E. 2d 777 (1953). In the instant case the only award of compensation is the one appealed from. The Commission, in this case, was not faced with any award to review since at the time of the hearing no award had yet been entered. The Industrial Commission could not err

then in failing to address the issue of changed condition under G.S. 97-47.

If the Commission should find on remand that plaintiff's disability had already become total at the time of the hearing, we believe the original award of the Commission would be rendered inadequate, because it was the responsibility of the Commission to award full compensation for the disability as it existed *at the time of the hearing.* As stated by our Supreme Court: "The Commission [in determing the compensation to be awarded] is concerned with conditions existing prior to and at the time of the hearing. If such conditions change in the future, to the detriment of the claimant, ... [G.S. 97-47] affords the claimant a remedy. ..." *Dail v. Kellex Corp.*, 233 N.C. 446, 449, 64 S.E. 2d 438, 440 (1951). The Commission apparently failed to make a finding on the issue of total disability because the Commission viewed the award under G.S. 97-30 as precluding a second award under G.S. 97-29. We cannot agree.

We realize that, at a given point in time, the provisions of G.S. 97-29 and G.S. 97-30 must be mutually exclusive; that is, a claimant cannot simultaneously be both totally and partially incapacitated. The Commission, however, is not limted to any given point in time, but is "concerned with conditions prior to and at the time of the hearing." *Id.* That the legislature envisioned that an employee might receive compensation under both G.S. 97-29 and G.S. 97-30 is apparent from the provision in G.S. 97-30 that: "In case the partial disability begins after a period of total disability, the latter period shall be deducted from the maximum period herein allowed for partial disability." We conclude from the above quotation (1) that the legislature considered the possibility that a claimant's condition might change before his claim was ever adjudicated; (2) that it intended that the claimant be compensated for each period during which his disability satisfied the language of one or the other of the statutes; and, (3) that the only limitation the legislature intended to place upon a claimant's compensation was that a claimant who was ultimately only partially disabled should be subject to the maximum established in G.S. 97-30 for the partially disabled. The failure of the legislature to make similar provision for adjusting the compensation allowable in the case of a period of partial disability followed by a total disability indicates to us an intention not to reduce the com-

pensation available to a claimant whose condition deteriorates to one of permanent and total incapacity. Upon reading the statutes according to our understanding of their legislative intent, we conclude that should the Commission find that plaintiff was totally disabled in 1978 he would be entitled to compensation for total incapacity under G.S. 97-29 from the date in 1978 when it determines that he became totally incapacitated. "[T]he award of the Industrial Commission should, within statutory limits, compensate him for all disability suffered." *Giles v. Tri-State Erectors*, 287 N.C. 219, 225, 214 S.E. 2d 107, 111 (1975).

This view, that benefits may be laid end-to-end, is in accord with the great majority of jurisdictions according to Professor Arthur Larson's treatise on worker's compensation. 2 Larson, The Law of Workmen's Compensation § 59.42 (1980). Professor Larson cites a North Carolina case, *Baldwin v. Cotton Mills*, 253 N.C. 740, 117 S.E. 2d 718 (1961), to illustrate that an award for permanent total disability may follow a temporary total award without a reduction for the amount previously awarded and without regard to the statutory maximum number of weeks available under the earlier temporary total award. Moving on to the precise situation presented in the case *sub judice*, the Professor comments: "A familiar combination is permanent partial followed by permanent total. The usual holding is that the permanent partial award need not be deducted from the subsequent permanent total award." *Id.* at 10-347.

A case containing an excellent discussion of this issue is cited in the Larson treatise, *Durant v. Butler Brothers*, 275 Minn. 487, 148 N.W. 2d 152 (1967). In that case the Minnesota Supreme Court was faced with the following situation: An employee sustained an injury in 1953 which, although minor at the time, later contributed to the development of progressive arthritis in his knees. In 1959 he was awarded compensation for permanent partial disability of his legs. In 1962 the employee became totally disabled due to the increased arthritic condition in his knees. The Minnesota Industrial Commission awarded him compensation for permanent and total disability, "less the compensation previously paid for permanent partial disability arising out of the same accident." *Id.* at 489, 148 N.W. 2d at 154.

The Minnesota statute provided no formula for reducing an award for total disability, although the statute providing survi-

vor's benefits made specific provision for reducing death benefits by an amount previously awarded. In reversing the Industrial Commission, the Minnesota Supreme Court, after examining the positions of the various jurisdictions, concluded that "The effect of the referee's decision to reduce the compensation payable for the permanent total disability by the full amount employee received for permanent partial disability is to say that he was not entitled to compensation for the period in which he was permanently partially disabled." *Id.* at 494, 148 N.W. 2d at 157. The Court went on to note that "there is no decisional or statutory authority for the credit applied by the commission against the compensation benefits awarded to employee for permanent total disability." *Id.*

We, too, find no authority for decreasing the award for total disability and therefore believe that plaintiff's compensation in the instant case should be to the fullest extent allowed under G.S. 97-29 and should be awarded without regard to the compensation previously awarded under G.S. 97-30. Our view that plaintiff should receive full compensation under G.S. 97-29 would apply only to the present fact situation, wherein the award under 97-30 had been fully paid *before* the plaintiff became totally disabled. Had the period for the partial disability award overlapped the period for the total award, a different result would be required because the stacking of total benefits on top of partial benefits, *for the same time period,* would allow plaintiff a greater recovery than the legislature intended. *See id.* Since, however, no such "stacking" of benefits occurred in this case, we see no reason to reduce the total disability award.

[2] Our conclusion that plaintiff is entitled to compensation under G.S. 97-29 gives rise to another issue: Should plaintiff be compensated for his permanent and total disability under G.S. 97-29 as it read in 1970 when plaintiff first became disabled, or as it read in 1978 when plaintiff's disability became permanent and total? The 1970 version of G.S. 97-29 provided for "a weekly compensation equal to sixty percent (60%) of his average weekly wages, but not more than fifty dollars ($50.00), nor less than ten dollars per week during not more than four hundred weeks from the date of the injury, provided that the total amount of compensation paid shall not exceed eighteen thousand dollars." 1969 N.C. Sess. Laws Ch. 143 § 1. The 1978 version of G.S. 97-29 provides for an increased weekly compensation, and, more im-

portantly, that compensation for permanent total disability "shall be paid for by the employer during the lifetime of the injured employee." 1973 N.C. Sess. Laws Ch. 1308, §§ 1, 2.

We are well aware that the law of this jurisdiction is that the applicable version of the statute is the one in effect when the disability occurs. *Wood v. Stevens & Co.*, 297 N.C. 636, 256 S.E. 2d 692 (1979). As applied to the present facts, however, this simple rule can become difficult to apply unless one bears in mind the rationale for the rule as stated in the case: The date of disability is the date upon which the employee's claim accrues and the date upon which the employer becomes liable. *Id.* at 644, 650, 256 S.E. 2d at 697, 701. We read *Wood* to require that a given statute within the Act be applied as it read at the time plaintiff first gained rights and defendant first became liable under that statute. We do not understand the *Wood* holding to require that the entire Workers' Compensation Act be applied as it existed at the time plaintiff's right to proceed under any provision of the Act first accrued. We believe plaintiff could become disabled, for the purpose of determining the applicable version of a statute, at different times under different statutes.

In 1970, plaintiff became partially disabled under G.S. 97-30 and thus became entitled to recover for partial disability under the 1970 version of that statute. Plaintiff had no right to claim compensation, nor was the employer exposed to liability, under G.S. 97-29 until 1978 when plaintiff appears to have become totally disabled; therefore, plaintiff became disabled, for purposes of G.S. 97-29, on the date in 1978 when his disability became total, and the version of G.S. 97-29 then in effect should be applied in determining the compensation to be awarded thereunder.

Under the 1978 version of G.S. 97-29 the award for total and permanent incapacity is to include "reasonable and necessary nursing services, medicines, sick travel, medical, hospital, and other treatment or care or rehabilitative services ... during the lifetime of the injured employee." The Commission would be required by this statute to award plaintiff medical expenses if they find plaintiff to be totally and permanently disabled. No finding that the medical treatment is necessary will be required since the Commission's finding of fact number 6 recited in part:

"Dr. Kelling believes, and it is hereby so found, that medical treatment will be necessary for plaintiff's lifetime and will provide the plaintiff with needed relief, though treatment will not reverse the damage to the lungs which has become permanent, but will only serve to prevent further damage."

The issue of whether the expenses are reasonable must, of course, be decided piecemeal as each bill is individually submitted to the Commission for its approval.

[3] Defendant's argument that medical expenses should be compensated only to the extent they would lessen the period of disability strikes us as untenable. Plaintiff's recovery of medical expenses might be so limited if he were proceeding under the provisions of G.S. 97-25 or G.S. 97-59, but G.S. 97-29 makes separate provision for medical expenses in cases of total and permanent disability. It appears obvious to us that the legislature, recognizing that employees who were truly totally and permanently disabled had no hope of recovery or of a lessened period of disability, intended to further the humanitarian goals of the Act by providing that in the case of the totally and permanently disabled, necessary medical treatment would be afforded under the Act even though it would do nothing to lessen the disability. If plaintiff is found to be totally and permanently disabled he will be entitled to medical expenses for life, dating from the time he became totally disabled. His entitlement will not be subject to limitations found in G.S. 97-25 or -59 or decisions based thereon, but will be subject only to the requirements of G.S. 97-29 that they be "reasonable and necessary."

Based on the foregoing decision, this case is remanded to the Industrial Commission for a determination of the crucial factual issue of whether plaintiff became permanently and totally disabled in 1978 and for an award under G.S. 97-29 as outlined in this opinion for such permanent total disability if the Commission finds as a fact upon rehearing that plaintiff became totally and permanently disabled in 1978 as all of the evidence before us on this appeal tends to show.

Remanded.

Judges MARTIN (Robert M.) and ARNOLD concur.