DAVID C. HELFRICH, Employee, Plaintiff
v.
COCA-COLA BOTTLING COMPANY CONSOLIDATED, Employer, SELF-INSURED
(GALLAGHER BASSETT SERVICES, INC., Third-Party Administrator), Defendants

No. COA12-106

Filed 5 March 2013

**Workers' Compensation—weekly disability compensation rate—misapprehension of law—insufficient findings of fact**

The Industrial Commission erred in a workers' compensation case by failing to consider the potential relevance of N.C.G.S. § 97-34 in determining plaintiff's weekly disability compensation rate and as a result, failed to make sufficient findings of fact to permit the Court of Appeals to determine whether the Commission awarded plaintiff the correct amount of compensation. The case was remanded for further proceedings.

Appeal by plaintiff from Opinion and Award entered 17 November 2011 by the North Carolina Industrial Commission. Heard in the Court of Appeals 14 August 2012.

*The Sumwalt Law Firm, by Vernon Sumwalt and Mark T. Sumwalt, for Plaintiff.*

*McAngus Goudelock and Courie, by Andrew R. Ussery and Daniel L. McCullough, for defendant Coca-Cola Bottling Company.*

ERVIN, Judge.

Plaintiff David C. Helfrich appeals from an order entered by the Industrial Commission awarding Plaintiff temporary total disability compensation at the rate of $634.28 per week from and after 15 March 2010 pending further order of the Commission. On appeal, Plaintiff contends that the Commission should have based its award upon a weekly compensation rate of $672.98 stemming from a 12 March 2008

work-related injury rather than the $634.28 weekly compensation rate associated with a 20 May 2009 work-related injury. After careful consideration of the Commission's order in light of the record and the applicable law, we hold that the Commission's order should be reversed and that this case should be remanded to the Commission for the entry of a new order containing adequate findings and conclusions.

## I. Factual Background

Although the substantive facts and procedural history associated with this case are significantly intertwined, the only issue debated in the parties' briefs is the amount of compensation which Plaintiff is entitled to receive for the period from and after 15 March 2010. While the Commission's order contains a number of factual determinations that have a material impact upon the manner in which this case should be resolved, those determinations do not appear to be in dispute at this time and are reflected in the substantive fact statement contained in this opinion as undisputed facts, rather than the statement of the procedural history of this case.

### A. Substantive Facts

Plaintiff sustained a series of work-related injuries by accident while working as a delivery truck driver for Defendant Coca-Cola. The first of these injuries occurred on 20 September 2006, when Plaintiff injured his shoulder, elbow, and lower back while engaged in repetitive lifting. On 21 November 2006, Dr. Yates Dunaway, an orthopedic surgeon, performed an arthroscopic labral debridement to Plaintiff's left shoulder. Defendant Coca-Cola admitted Plaintiff's right to receive temporary total compensation at a weekly rate of $543.58 (which the Commission later adjusted to $550.23) from and after 23 October 2006, which was the date upon which Plaintiff's disability began. As a result of the fact that Plaintiff returned to work on 4 December 2006, he received his last compensation check associated with the 20 September 2006 injury on 28 November 2006. On 21 February 2007, Plaintiff was released to return to work without being subject to any restrictions after having reached the point of maximum medical improvement relating to this left shoulder injury.

On 11 October 2007, Plaintiff sprained his left knee while working in a walk-in cooler. On 19 December 2007, Dr. Jonathan Paul, an orthopedic surgeon, performed a left knee arthroscopy, medial meniscectomy, and chondroplasty. On 9 January 2008, Plaintiff returned to work for Defendant Coca-Cola subject to light duty

restrictions. At a later time, Dr. Paul determined that Plaintiff had reached the point of maximum medical improvement with respect to this left knee injury and assigned a five percent permanent partial disability rating to Plaintiff's left leg. Ultimately, the parties agreed that Plaintiff was entitled to receive temporary total disability benefits for the period from 19 December 2007 until 8 January 2008 in the weekly amount of $613.81 (which the Commission later corrected to $704.32).

On 12 March 2008, Plaintiff injured his right foot when a truck lift gate malfunctioned. Initially, Plaintiff was diagnosed as suffering from a foot contusion and plantar fasciitis and was referred for physical therapy. After Plaintiff continued to report symptoms in his right foot, he received treatment from Dr. E. James Sebold, an orthopedic surgeon specializing in foot and ankle surgery, who diagnosed him as suffering from right-sided plantar fasciitis on 21 August 2008. As a result of the fact that Plaintiff was receiving pain medications from multiple sources, Dr. Sebold referred Plaintiff to Dr. Neil Taub, a physical medicine and rehabilitation specialist, for pain management, including the consolidation of Plaintiff's pain medication prescriptions. At the time that he began to treat Plaintiff on 27 August 2008, Dr. Taub diagnosed Plaintiff as suffering from ankle joint pain and chronic right-sided plantar fasciitis and prescribed certain medications to assist Plaintiff in addressing the effects of that pain. On 13 January 2009, Dr. Sebold released Plaintiff to return to work without restrictions. Dr. Taub, however, imposed a work restriction upon Plaintiff consisting of a "sit-down break every hour" on 23 January 2009. The restriction imposed by Dr. Taub has remained in effect until the present date, so that Plaintiff performed modified duty work for Defendant Coca-Cola as long as he continued to work there. In view of this modified work schedule, the Commission determined that Plaintiff was entitled to temporary partial disability benefits in the weekly amount of $672.98 for the period from the 12 March 2008 injury until 15 March 2010, when Plaintiff was terminated from his employment with Defendant Coca-Cola.

On 20 May 2009, Plaintiff injured his right knee and ankle when he slipped while stepping off of a forklift, with the disability period associated with this injury running from 17 June through 29 June 2009. On 17 June 2009, Plaintiff was referred to Dr. Dana Piasecki, an orthopedic surgeon, who continued to treat Plaintiff for both of his knee injuries through the date of the hearing held in this case before the Deputy Commissioner. After continuing to experience knee-

related problems following his return to light duty work on 29 June 2009, Plaintiff underwent a right knee arthroscopy, debridement, and partial medial meniscectomy on 13 January 2010. On 8 February 2010, Plaintiff returned to work subject to restrictions that he do no prolonged bending, stooping, squatting, kneeling, twisting, or lifting and that all of his work be performed in a sitting position. Although Defendant Coca-Cola initially paid temporary total disability compensation to Plaintiff at a weekly rate of $626.74 relating to this injury, it later stipulated that the appropriate weekly rate was $634.28.

After returning to work on 8 February 2010, Plaintiff experienced ongoing problems stemming from his knee injuries. Throughout the period following the 20 May 2009 injury, Plaintiff continued to receive pain management services from Dr. Taub, who provided Plaintiff with medications for use in addressing the pain associated with both his right foot and knee pain.[1] On 15 March 2010, Plaintiff was discharged from his employment with Defendant Coca-Cola for falling asleep at work on 11 March 2010. Subsequently, based upon opinion testimony provided by Dr. Taub, the Commission found that Plaintiff fell asleep at work due to the effects of the medication that he had been taking for the pain associated with his right foot and knee injuries and that his termination did not constitute a constructive refusal to accept employment sufficient to bar the receipt of workers' compensation benefits. In addition, the Commission found that Defendant made a reasonable, but unsuccessful, effort to find alternative employment between the termination of his employment with Defendant Coca-Cola on 15 March 2010 and 30 September 2010, when Dr. Piasecki instructed Plaintiff to refrain from performing any work in anticipation of the need for further surgery.[2] Plaintiff has been under restrictions imposed by Dr. Piasecki since 29 April 2010.

## B. Procedural History

On 14 May 2010, Plaintiff filed a Form 33 in each of the four Commission proceedings arising from the work-related injuries

---

1. As a result of his various injuries, Plaintiff was either restricted from working entirely or allowed to work subject to restrictions for the entire period of time from 12 March 2008 until the termination of his employment with Defendant Coca-Cola on 15 March 2010.

2. Dr. Piasecki had released Plaintiff to return to work without restrictions on 15 April 2010. However, given that Plaintiff experienced a significant increase in pain upon returning to work, Dr. Piasecki reinstated the previously imposed restrictions on 29 April 2010. The restrictions in question remained in effect as of the date of the evidentiary hearing held in this case.

which he had sustained, alleging that the parties had been unable to agree upon the amount of compensation which Plaintiff was entitled to receive from the period beginning on 9 March 2010 and continuing until the present and requesting that the Commission resolve that dispute. On 8 June and 16 June 2010, Defendants filed four Form 33Rs, alleging that Plaintiff was not entitled to receive any workers' compensation benefits. In response to a motion filed by Plaintiff, the Commission entered orders on 28 June and 7 July 2010 consolidating Plaintiff's claims for mediation, hearing, and decision.

On 21 October 2010, Plaintiff's claims were heard before Deputy Commissioner Victoria M. Homick. On 27 May 2011, Deputy Commissioner Homick entered an order providing, in pertinent part, that Plaintiff was entitled to receive temporary total disability payments at the rate of $634.28 per week from and after 15 March 2010, subject to an offset in the amount of $466.00 per week from 15 March 2010 until 29 September 2010 relating to unemployment compensation benefits that Plaintiff received. On 31 May 2011, Plaintiff noted an appeal to the Commission from Deputy Commissioner Homick's order.

On 17 November 2011, the Commission entered an order prepared by Commissioner Danny Lee McDonald, with the concurrence of Chair Pamela T. Young and Commissioner Christopher Scott, affirming Deputy Commissioner Homick's decision, subject to minor modifications.[3] In its order, the Commission concluded as a matter of law that:

> 8. As a direct and proximate result of plaintiff's compensable injuries by accident to his right foot on March 12, 2008, and right knee on May 20, 2009, plaintiff has been unable to earn the same or greater wages as he was earning in the same or any other employment from March 15, 2010, and continuing. As a result, plaintiff is entitled to receive temporary total disability compensation at the rate of $634.28 per week, continuing until further Order of the Industrial Commission. N.C. Gen. Stat. § 97-29.

On 22 November 2011, Plaintiff filed a motion seeking reconsideration of the Commission's decision with respect to the amount of the temporary total disability payment which Plaintiff was entitled to

---

3. The Commission also addressed and resolved numerous other issues in this order which have not been addressed in the parties' briefs and which we have not, for that reason, discussed in this opinion.

receive. The Commission denied Plaintiff's reconsideration motion on 21 December 2011. Plaintiff noted an appeal to this Court from the Commission's decision.

## II. Legal Analysis

### A. Standard of Review

Appellate review of a Commission order is "limited to reviewing whether any competent evidence supports the Commission's findings of fact and whether the findings of fact support the Commission's conclusions of law," with the Commission having sole responsibility for evaluating the weight and credibility to be given to the record evidence. *Deese v. Champion Int'l Corp.*, 352 N.C. 109, 116, 530 S.E.2d 549, 553 (2000). "[F]indings of fact which are left unchallenged by the parties on appeal are 'presumed to be supported by competent evidence' and are, thus 'conclusively established on appeal.' " *Chaisson v. Simpson*, 195 N.C. App. 463, 470, 673 S.E.2d 149, 156 (2009) (quoting *Johnson v. Herbie's Place*, 157 N.C. App. 168, 180, 579 S.E.2d 110, 118, *disc. review denied*, 357 N.C. 460, 585 S.E.2d 760 (2003)). However, the "Commission's conclusions of law are reviewed *de novo.*" *McRae v. Toastmaster, Inc.*, 358 N.C. 488, 496, 597 S.E.2d 695, 701 (2004). In order to facilitate appropriate appellate review, "the Commission must make specific findings with respect to crucial facts upon which the question of plaintiff's right to compensation depends." *Sheehan v. Perry M. Alexander Constr. Co.*, 150 N.C. App. 506, 511, 563 S.E.2d 300, 303 (2002) (*quoting Gaines v. Swain & Son, Inc.*, 33 N.C. App. 575, 579, 235 S.E.2d 856, 859 (1997) (quotation marks omitted); *see also Johnson v. Southern Tire Sales & Serv/*, 358 N.C. 701, 705, 599 S.E.2d 508, 511-12 (2004) (stating that, "[w]hile the Commission is not required to make findings as to each fact presented by the evidence, it must find those crucial and specific facts upon which the right to compensation depends so that a reviewing court can determine on appeal whether an adequate basis exists for the Commission's award") (citing *Guest v. Brenner Iron & Metal Co.*, 241 N.C. 448, 451, 85 S.E.2d 596, 599 (1955) and *Singleton v. Durham Laundry Co.*, 213 N.C. 32, 34-35, 195 S.E. 34, 35-36 (1938)). In addition, "if the Commission acts under a misapprehension of the law, . . . the award [should] 'be set aside and the case remanded for a new determination using the correct legal standard.' " *Coe v. Haworth Wood Seating*, 166 N.C. App. 251, 254, 603 S.E.2d 549, 551 (2004) (*quoting Ballenger v. ITT Grinnell Indus. Piping, Inc.*, 320 N.C. 155, 158, 357 S.E.2d 683, 685 (1987).

HELFRICH v. COCA-COLA BOTTLING CO. CONSOL.

[225 N.C. App. 701 (2013)]

## B. Appropriate Compensation Rate

As we have already noted, the ultimate issue which we must decide in this case is whether the Commission appropriately determined the disability benefit rate that Plaintiff is entitled to receive from and after 15 March 2010. Although the Commission determined that the appropriate rate was $634.28 per week, Plaintiff contends that the Commission was required by N.C. Gen. Stat. § 97-34 to utilize a $672.98 rate instead. As a result, a proper resolution of Plaintiff's challenge to the Commission's decision requires an analysis of the manner in which any disability payments to which Plaintiff might be entitled should be calculated.

The payment of temporary total disability benefits is authorized by N.C. Gen. Stat. § 97-29(a), which provides that, "when an employee qualifies for total disability, the employer shall pay or cause to be paid . . . to the injured employee a weekly compensation equal to sixty-six and two-thirds percent (66 2/3%) of his average weekly wages." For purposes of determining eligibility for workers' compensation benefits, "disability [is] defined . . . [as] the impairment of the injured employee's earning capacity rather than physical disablement." *Russell v. Lowes Prod. Distrib.*, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993) (citing *Peoples v. Cone Mills Corp.*, 316 N.C. 426, 434, 342 S.E.2d 798, 804 (1986)). "The determination that an employee is disabled is a conclusion of law that must be based upon findings of fact supported by competent evidence." *Teraska v. AT&T*, 174 N.C. App. 735, 739, 622 S.E.2d 145, 148 (2005), *aff'd per curiam*, 350 N.C. 584, 634 S.E.2d 888 (2006) (citing *Hilliard v. Apex Cabinet Co.*, 305 N.C. 593, 595, 290 S.E.2d 682, 684 (1982). A determination of "disability" requires proof

> (1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment, (2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and (3) that this individual's incapacity to earn was caused by plaintiff's injury.

*Hilliard*, 305 N.C. at 595, 290 S.E.2d at 683 (citing *Watkins v. Cent. Motor Lines, Inc.*, 279 N.C. 132, 137, 181 S.E. 2d 588, 592 (1971)). A plaintiff may satisfy the first two prongs of the *Hilliard* test through

(1) the production of medical evidence that he is physically or mentally, as a consequence of the work related injury, incapable of work in any employment; (2) the production of evidence that he is capable of some work, but that he has, after a reasonable effort on his part, been unsuccessful in his effort to obtain employment; (3) the production of evidence that he is capable of some work but that it would be futile because of preexisting conditions, i.e., age, inexperience, lack of education, to seek other employment; or (4) the production of evidence that he has obtained other employment at a wage less than that earned prior to the injury.

*Russell,* 108 N.C. App. at 765, 425 S.E.2d at 457 (citations omitted).

The record establishes that the Commission concluded that Plaintiff was totally disabled and entitled to temporary total disability payments from and after 15 March 2010. According to the Commission, "plaintiff has been unable to earn the same or greater wages as he was earning in the same or any other employment from March 15, 2010" to the present "[a]s a direct and proximate result of plaintiff's compensable injuries by accident to his right foot on March 12, 2008, and right knee on May 20, 2009." In other words, the Commission determined that Plaintiff was disabled from and after 15 March 2010 as a result of both the 12 March 2008 foot injury, with which a $672.98 weekly compensation rate is associated, and the 20 May 2009 knee injury, with which a $634.28 weekly compensation rate is associated. Having made the determination that Plaintiff was disabled as the result of the effects of two separate compensable injuries, the Commission was then required to determine the amount of the temporary total disability payment which Plaintiff was entitled to receive, a determination which required the Commission to act on the basis of a proper interpretation of N.C. Gen. Stat. § 97-34.

"The principal goal of statutory construction is to accomplish the legislative intent." *Lenox, Inc. v. Tolson,* 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001) (citing *Polaroid Corp. v. Offerman,* 349 N.C. 290, 297, 507 S.E.2d 284, 290 (1998), *cert. denied,* 526 U.S. 1098, 119 S. Ct. 1576, 1432 L. Ed. 2d 679 (1999)). "The best indicia of that intent are the language of the statute . . ., the spirit of the act and what the act seeks to accomplish." *Coastal Ready-Mix Concrete Co. v. Board of Commissioners,* 299 N.C. 620, 629, 265 S.E.2d 379, 385 (1980). "When the language of a statute is clear and unambiguous, it must be given effect and its clear meaning may not be evaded by an administrative

body or a court under the guise of construction." *State ex rel. Utilities Comm. v. Edmisten*, 291 N.C. 451, 465, 232 S.E.2d 184, 192 (1977) (citing *Peele v. Finch*, 284 N.C. 375, 382, 200 S.E.2d 635, 640 (1973)). We will now utilize these principles of statutory construction in order to determine whether the Commission properly determined the rate of compensation to which Plaintiff was entitled from and after 15 March 2010.

According to N.C. Gen. Stat. § 97-34:

> If an employee receives an injury for which compensation is payable, while he is still receiving or entitled to compensation for a previous injury in the same employment, he shall not at the same time be entitled to compensation for both injuries . . . but he shall be entitled to compensation for that injury and from the time of that injury which will cover the longest period and the largest amount.

The obvious purpose of N.C. Gen. Stat. § 97-34 is to prevent an injured employee from obtaining double recovery by prohibiting the making of multiple compensation payments that would otherwise be associated with overlapping periods of disability. *Farley v. N.C. Dep't of Labor*, 146 N.C. App. 584, 588, 553 S.E.2d 231, 234 (2001); *see also Smith v. American & Efird Mills*, 51 N.C. App. 480, 490, 277 S.E.2d 83, 89-90 (1981) (stating that, "[h]ad the period for the partial disability award overlapped the period for the total award, a different result would be required because the stacking of total benefits on top of partial benefits, for the same time period, would allow plaintiff a greater recovery than the legislature intended"), *modified and aff'd*, 305 N.C. 507, 290 S.E.2d 634 (1982). In order to achieve that goal, the General Assembly adopted a formula for determining which of two potentially applicable compensation rates should apply in instances when a claimant was entitled to receive disability payments stemming from multiple injuries by accident. According to that formula, when read in accordance with the plain language of N.C. Gen. Stat. § 97-34, the Commission was required to determine (1) if Plaintiff had received an injury for which compensation was payable while still receiving or entitled to receive compensation for a previous injury and, if so, (2) which of the two rates of compensation to which Plaintiff was entitled would result in payment for the longest time

and in the largest amount.[4] After making these two determinations, the Commission is required to award Plaintiff the amount of compensation which "will cover the longest period and the largest amount payable under [the] Article." N.C. Gen. Stat. § 97-34.[5]

Although both parties concede that N.C. Gen. Stat. § 97-34 is relevant to a proper determination of the amount of compensation which Plaintiff should be awarded, the Commission made no reference to that statutory provision in its order. Instead, the Commission simply concluded that, "[a]s a direct and proximate result of [his] compensable injuries by accident to his right foot on March 12, 2008, and right knee on May 20, 2009, [P]laintiff has been unable to earn the same or greater wages as he was earning in the same or any other employment from March 15, 2010, and continuing," and that "[P]laintiff is entitled to receive temporary total disability compensation at the rate of $634.28 per week, continuing until further Order of the Industrial Commission." Thus, the Commission never determined whether Plaintiff had "receive[d] an injury for which compensation [was] payable" while "still receiving or [being] entitled to compensation for a previous injury in the same employment" or, if so, which of the applicable compensation rates would "cover the longest period and [provide] the largest amount payable under [the] Article." N.C. Gen. Stat. § 97-34. Instead, the Commission simply determined that Plaintiff was disabled as a result of the 12 March 2008 right foot injury and the 20 May 2009 right knee injury, considered collectively, and was entitled to temporary total disability compensation at the lower rate deemed appropriate for the latter of the two injuries without any explanation for its decision to select the rate associated with the 20 May 2009 injury rather than the rate associated with the 12 March 2008 injury. As a result, although it is clear to us that the Commission determined that Plaintiff's post-15 March 2010 disability stemmed from both the 12 March 2008 and 20 May 2009 injuries, we are simply unable to determine from the relevant portions of the Commission's

4. Although the parties have significant disagreements about many issues in this case, they both equate the expression "injury for which compensation is payable" as used in N.C. Gen. Stat. § 97-34 as synonymous with the term "disability." As a result, we will treat the terms in question as synonymous as well.

5. The literal language of N.C. Gen. Stat. § 97-34 would be implicated by both total and partial disability payments. However, since no partial disability payment to which Plaintiff might be entitled as a result of the 12 March 2008 injury would exceed the temporary total disability payment which the Commission awarded to Plaintiff in this case, any reference to disability payments throughout the remainder of this opinion should be understood as a reference to temporary total disability payments.

order whether it believed that the 20 May 2009 injury occurred while Plaintiff was "still receiving or entitled to compensation for a previous injury in the same employment" or whether it made a conscious decision, based upon a correct application of N.C. Gen. Stat. § 97-34, as to whether the weekly disability compensation rate applicable to the 12 March 2008 or 20 May 2009 injuries should be awarded in light of Plaintiff's post-15 March 2010 disability. As a result, since the Commission appears to have decided this case without considering the potential relevance of N.C. Gen. Stat. § 97-34 and since the Commission's findings are insufficient to permit a proper application of the formula prescribed in N.C. Gen. Stat. § 97-34 to the facts of this case, we are compelled to reverse the Commission's decision and to remand this case to the Commission for further proceedings not inconsistent with this opinion, including the entry of an order containing the findings and conclusions necessary to properly apply the relevant statutory formula.

In his brief, Plaintiff argues that we should "remand this case to the Commission with instructions to award disability compensation at all times after March 15, 2010, measured by his average weekly wage of $1,009.42 from his third injury that occurred on March 12, 2008." In support of this contention, Plaintiff consistently argues that he had "satisfied the second [and third] method[s] of proving disability under *Russell* due to the third injury" during the relevant periods of time since 15 March 2010 given that Plaintiff was subject to continued medically imposed work restrictions during that period and given that Plaintiff either made a reasonable effort to find work or was unable to find work as a result of the combined effect of all of the restrictions to which he was subject. Defendants, on the other hand, argue that the effect of the Commission's decision is a determination that Plaintiff was temporarily and totally disabled after 15 March 2010 due to the 20 May 2009 injury, that the record supports a determination that Plaintiff was totally disabled after 15 March 2010 as a result of the 20 May 2009 injury, and that the record did not support a determination that Plaintiff was totally disabled after 15 March 2010 solely due to the 12 March 2008 injury. The fundamental problem with the contentions advanced by both parties is that the Commission never made sufficient factual findings to permit us to adequately evaluate the validity of either argument.

On the one hand, although the Commission determined that "[P]laintiff has been temporarily and partially disabled from March 12, 2008, through March 15, 2010" "as a direct and proximate result of

[P]laintiff's compensable right foot injury on March 12, 2008," and that "[P]laintiff has been unable to earn the same or greater wages as he was earning in the same or any other employment from March 15, 2010, and continuing," the Commission never directly addressed whether Plaintiff continued to be either partially or totally disabled as a result of the 12 March 2008 right foot injury, considered separately from the 20 May 2009 knee injury, after 15 March 2010. Simply put, the fact that the Commission found that Plaintiff was still subject to work-related restrictions stemming from the 12 March 2008 injury, that Plaintiff made a reasonable search for alternative employment after 15 March 2010, and that Plaintiff had been medically restricted from working after 29 September 2010 does not, without more, suffice to support a determination that Plaintiff was entitled to receive temporary total disability benefits from and after 15 March 2010 as a result of the 12 March 2008 injury. On the other hand, we are equally unwilling to treat a conclusion that Plaintiff was only entitled to compensation at the rate associated with the 20 May 2009 injury from and after 15 March 2010 as a determination that Plaintiff was not entitled to receive temporary total disability benefits as a result of the 12 March 2008 injury from and after 15 March 2010 given the Commission's failure to explicitly address the impact of the 12 March 2008 and 20 May 2009 injuries, taken separately rather than in conjunction with each other, upon Plaintiff's eligibility for disability benefits on or after 15 March 2010. In addition, we are unwilling to hold that the record does not support a determination that Plaintiff was entitled to receive temporary total disability benefits as a result of the 12 March 2008 injury from and after 15 March 2010 given the fact that the Commission's findings were apparently made without taking the formula prescribed by N.C. Gen. Stat. § 97-34 into account. As a result, none of the arguments advanced by either Plaintiff or Defendants persuade us to simply affirm the Commission's decision or to reverse that decision with instructions to enter a new order requiring the payment of temporary total disability benefits at the rate associated with the 12 March 2008 injury.

### III.  Conclusion

Thus, for the reasons set forth above, we hold that the Commission, as a result of its misapprehension of the applicable law, failed to make sufficient findings of fact to permit us to determine whether the Commission awarded the correct amount of compensation to Plaintiff from and after 15 March 2010. As a result, this case should be, and hereby is, remanded to the Commission for the pur-

pose of conducting further proceedings not inconsistent with this opinion, including the entry of a new opinion and award containing sufficient findings of fact and conclusions of law to permit a proper application of the legal principles enunciated in N.C. Gen. Stat. § 97-34 to the facts of this case.

REVERSED AND REMANDED.

Judges McGEE and STEELMAN concur.